NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

LUZ RODRIGUEZ,

        Plaintiff,

v.

THE DEPARTMENT OF POLICE
(TRENTON, NJ), *et al.*,

        Defendants.

Case No.: 3:17-cv-12902-BRM-TJB

**OPINION**

**MARTINOTTI, DISTRICT JUDGE**

Before this Court is Defendants Trenton Police Department and two unidentified officers' ("Defendants")[1] Motion to Dismiss *pro se* Plaintiff Luz Rodriguez's ("Rodriguez") Second Amended Complaint. (ECF No. 59.) Rodriguez opposes the motion. (ECF No. 62.) Having reviewed the parties' submissions filed in connection with the Motion and having declined to hold oral argument pursuant to Federal Rule of Civil Procedure 78(b), for the reasons set forth below, and for good cause shown, Defendants' Motion is **GRANTED WITH PREJUDICE**.

**I.    BACKGROUND**

The Second Amended Complaint is difficult to decipher, but the Court gleans the following facts. On October 2001, Rodriguez was cleaning a home she shared with an unidentified man when she got into an argument with him. (ECF No. 57 at 3.) She refused to argue because he was drunk,

---

[1] The Second Amended Complaint's caption lists "Department of Trenton Police Officer" as the Defendant. However, Section I, "Parties in this complaint" lists "two police officer[s]" from Trenton, New Jersey, as the Defendants. Because Rodriguez is *pro se*, the Court construes the Second Amended Complaint liberally and interprets Rodriguez is seeking relief against the Department of Trenton and two unidentified officers from that station.

1

but he continued to scream at her. (*Id.*) As a result, she called the Trenton Police Department. (*Id.*) Because she was not a resident listed on the lease or the owner of the home, she was asked by police to evacuate from the premises. (*Id.*) For reasons unknown to the Court, she was ultimately "lock[ed]" up and transferred to the Trenton Police Department. (*Id.*) Following her arrest, Defendants caused physical injuries to her at the police station. (*Id.* at 2-5.)

Plaintiff filed a Complaint against the Trenton Police Department on December 11, 2017. (ECF No. 1.) On December 22, 2017, she filed an Amended Complaint. (ECF No. 3.) On January 9, 2019, this Court dismissed Rodriguez's Amended Complaint for lack of jurisdiction and gave her one last opportunity to file a second amended complaint curing the deficiencies addressed on the record. (ECF No. 55, 56.) Rodriguez filed her Second Amended Complaint on January 22, 2019, naming the Trenton Police Department and "two [unnamed] police officer[s]." (ECF No. 57 at 1-2.) On April 4, 2019, Defendants filed a Motion to Dismiss. (ECF No. 59.) Rodriguez opposed the Motion on June 24, 2019. (ECF No. 62.)

II. **LEGAL STANDARDS**

A. **Federal Rules of Civil Procedure 8 and 12(b)(6)**

Every complaint must comply with the pleading requirements of the Federal Rules of Civil Procedure. Rule 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (citations omitted).

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court is "required to accept as true all factual allegations in the complaint and draw all inferences in the facts alleged in the light most favorable to the [plaintiff]." *Philips*, 515 F.3d at

228. "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). However, the plaintiff's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286. Instead, assuming the factual allegations in the complaint are true, those "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for misconduct alleged." *Id.* This "plausibility standard" requires the complaint allege "more than a sheer possibility that a defendant has acted unlawfully," but it "is not akin to a 'probability requirement.'" *Id.* (citing *Twombly*, 550 U.S. at 556). "Detailed factual allegations" are not required, but "more than 'an unadorned, the defendant-harmed-me accusation" must be pled; it must include "factual enhancements" and not just conclusory statements or a recitation of the elements of a cause of action. *Id.* (citing *Twombly*, 550 U.S. at 555, 557).

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

While as a general rule, a court many not consider anything beyond the four corners of the complaint on a motion to dismiss pursuant to 12(b)(6), the Third Circuit has held "a court may consider certain narrowly defined types of material without converting the motion to dismiss [to one for summary judgment pursuant under Rule 56]." *In re Rockefeller Ctr. Props. Sec. Litig.,* 184 F.3d 280, 287 (3d Cir. 1999). Specifically, courts may consider any "document *integral to or explicitly relied upon* in the complaint." *In re Burlington Coat Factory Sec. Litig.,* 114 F.3d at 1426.

**III. DECISION**

Defendants argue the Second Amended Complaint contains many of the same deficits as the Amended Complaint. (ECF No. 59-5 at 1.) Specifically, they contend this Court lacks subject matter jurisdiction, Rodriguez failed to state a claim upon which relief can be granted, she failed to file a tort claim notice prior to initiating this action, her claims are barred by the statute of limitations, and that her 42 U.S.C. § 1983 claims are barred due to her inability to identify the two officers. (*See* ECF No. 59-5.)

**A. Subject Matter Jurisdiction**

Defendants argue the Second Amended Complaint fails to allege a clearly violated Federal Statute or that Rodriguez's constitutional rights were violated thereby invoking federal question jurisdiction. (ECF No. 59-5 at 2.) Rodriguez's Second Amended Complaint alleges jurisdiction is based on "Federal Questions," "U.S. Government Plaintiff," and that she is bringing "this matter and [her] constitutional right[s] [sic]." Because Rodriguez is *pro se*, the Court construes her Second Amended Complaint liberally, *see Haines v. Kerner*, 404 U.S. 519, 520–21 (1972), and interprets Rodriguez to allege an excessive force claim in violation of § 1983. Accordingly, the Court finds it has jurisdiction to hear the matter.

### B. Failure to State a Claim

Defendants argue the Second Amended Complaint is difficult to decipher and that they cannot reasonably mount a defense to it. (ECF No. 59-5 at 3.) Specifically, they contend they "cannot determine what cause of action plaintiff pleads, and what claims she makes, as the submission contains some rambling sentences." (*Id.*) The Court agrees. Rodriguez's Second Amended Complaint fails to provide Defendants with "fair notice" of what her claims are and the grounds upon which her claims rest. *Erickson*, 551 U.S. at 93. For that reason alone, the Second Amended Complaint may be dismissed, pursuant to Rule 8(a). Nonetheless, because Rodriguez is *pro se*, the Court construes her Second Amended Complaint liberally and interprets it to allege a single claim of excessive force in violation of § 1983.

The Fourth Amendment prohibits a law enforcement officer from using "excessive force in the course of making an arrest, investigatory stop, or other 'seizure.'" *Graham v. Connor*, 490 U.S. 386, 388 (1989). "A person is seized by the police and thus entitled to challenge the government's action under the Fourth Amendment when the officer, by means of physical force or show of authority, terminates or restrains his freedom of movement through means intentionally applied." *Brendlin v. California*, 551 U.S. 249, 254 (2007) (emphasis and internal citations removed).

"'Seizure' alone is not enough for § 1983 liability; the seizure"—including the force used to effect the seizure—"must be 'unreasonable.'" *Brower v. Inyo Cty.*, 489 U.S. 593, 599 (1989). To determine whether an officer's use of force was unreasonable, "a court must consider[] all of the relevant facts and circumstances leading up to the time that the officers allegedly used excessive force." *Rivas v. City of Passaic*, 365 F.3d 181, 198 (3d Cir. 2004). A court must give "careful attention to the facts and circumstances of each particular case, including the severity of

the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396. Other factors to consider include whether the plaintiff may be "violent or dangerous, the duration of the action, whether the action takes place in the context of effecting an arrest, the possibility that the [plaintiff] may be armed, and the number of persons with whom the police officers must contend at one time." *Kopec v. Tate*, 361 F.3d 772, 777 (3d Cir. 2004). Courts may also consider any injury or the absence of any injury to the plaintiff. *See Mellott v. Heemer*, 161 F.3d 117, 123 (3d Cir. 1998).

Courts must view these factors "in light of the totality of the circumstances" and "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Johnson v. City of Phila.*, 837 F.3d 343, 350 (3d Cir. 2016) (quoting *Graham*, 490 U.S. at 396-97). Courts must likewise "mak[e] 'allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation.'" *Id.* (quoting *Graham*, 490 U.S. at 396-97). This inquiry proceeds "'without regard to [the officer's] underlying intent or motivations.' Thus, if a use of force is objectively unreasonable, an officer's good faith is irrelevant; likewise, if a use of force is objectively reasonable, any bad faith motivation on the officer's part is immaterial." *Estate of Smith v. Marasco*, 318 F.3d 497, 515 (3d Cir. 2003) (quoting *Graham*, 490 U.S. at 397).

Rodriguez does not plead a plausible claim of excessive force. She pleads two unidentified police officers used force against her at the Trenton Police Station. However, she fails to plead facts demonstrating the use of force was unreasonable or excessive. In fact, she fails to allege what kind of force the officer's use. She merely states the officers assaulted her and that her forehead

was bleeding at the station. Rodriguez must show more than a mere possibility of liability. *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016). Rodriguez fails to plead a plausible claim of excessive force, therefore Defendants' Motion to Dismiss this claim is **GRANTED**.

### C. Claims Against the Unidentified Officers

Even though the Court has already determined Rodriguez has not sufficiently plead a § 1983 excessive force claim, the Court also notes the § 1983 claim fails as to the unidentified officers due to Rodriguez's inability to identify them. The Third Circuit has determined that a plaintiff's "inability to identify his attacker was fatal to his [§ 1983] claims." *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 284 (3d Cir. 2018). "[A] defendant in a civil rights action must have 'personal involvement' in the alleged wrongs." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207–08 (3d Cir. 1988). Therefore, "a plaintiff alleging that one or more officers engaged in unconstitutional conduct must [plead] the 'personal involvement' of each named defendant." *Id.* Accordingly, the § 1983 claim against the Unidentified Officers is **DISMISSED** for this reason as well.

### D. Claims Against the Trenton Police Department

Regarding Rodriguez's § 1983 claims against the Trenton Police Department, "[c]ourts 'treat a municipality and its police department as a single entity for purposes of section 1983 liability.'" *Mikhaeil v. Santos*, No. 10–03876, 2012 WL 6554093, at *4 (D.N.J. Dec. 14, 2012) (quoting *Bonenberger v. Plymouth Twp.*, 132 F.3d 20, 25 n.4 (3d Cir.1997)). "The Supreme Court enunciated the rule for imposing liability against a municipality [or local government] under section 1983 in *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978)." *Kneipp v. Tedder*, 95 F.3d 1199, 1211 (3d Cir. 1996). Pursuant to 42 U.S.C. § 1983, governmental

entities cannot be liable for the actions of its employees on a *respondeat superior* theory. *Iqbal*, 556 U.S. at 676. The Court in *Monell* held:

> [A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.

*Id.* at 694. There must be a "direct causal link between a municipal policy or custom and the alleged constitutional deprivation" to establish municipal liability. *City of Canton v. Harris*, 489 U.S. 378, 385 (1989).

There are three scenarios where the acts of a government employee may be characterized to be the result of a policy or custom of a government entity:

> The first is where the appropriate officer or entity promulgates a generally applicable statement of policy and the subsequent act complained of is simply an implementation of that policy. The second occurs where no rule has been announced as policy but federal law has been violated by an act of the policymaker itself. Finally, a policy or custom may also exist where the policymaker has failed to act affirmatively at all, [though] the need to take some action to control the agents of the government is so obvious, and the inadequacy of existing practice so likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need.

*Jiminez v. All Am. Rathskeller, Inc.*, 503 F.3d 247, 250 (3d Cir. 2007) (citation omitted).

A policy or custom can be established in two ways. "Policy is made when a decision [] maker possess[ing] final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict." *Benjamin v. E. Orange Police Dep't*, 937 F. Supp. 2d 582, 595 (D.N.J. 2013) (quoting *Andrews v. City of Phila.*, 895 F.2d 1469, 1480 (3d Cir. 1990) (citation omitted)). "A course of conduct is considered to be a custom when, though not authorized by law, such practices of state officials [are] so permanent and well settled as to virtually constitute

law." *Id.* (quoting *Andrews*, 895 F.2d at 1480 (citation omitted)). Custom can also be established through evidence of "knowledge and acquiescence." *Id.*

"[I]n the absence of an unconstitutional policy, a municipality's failure to properly train its employees and officers can create an actionable violation of a party's constitutional rights under § 1983." *Reitz v. Cty. of Bucks*, 125 F.3d 139, 145 (3d Cir. 1997) (citation omitted). However, a failure to train claim can only serve as the basis for a § 1983 liability when "the failure to train amounts to deliberate indifference to the rights of persons with whom the [municipal employees] come into contact." *Id.* (citation omitted). "Only where a failure to train reflects a 'deliberate' or 'conscious' choice by a municipality—a 'policy' as defined by our prior cases—can a city be liable for such a failure under § 1983." *Id.* (citation omitted).

Establishing a failure to train claim under § 1983 is difficult. *Id.*; *City of Canton*, 489 U.S. at 387 (concluding there are "limited circumstances in which an allegation of a 'failure to train' can be the basis for liability under § 1983"). "A plaintiff pressing a § 1983 claim must identify a failure to provide specific training that has a causal nexus with their injuries and must demonstrate that the absence of that specific training can reasonably be said to reflect a deliberate indifference to whether the alleged constitutional deprivations occurred." *Reitz*, 125 F.3d at 145 (citing *Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1030 (3d Cir. 1991)). A "plaintiff must also demonstrate that, through its deliberate conduct, the municipality was the "moving force" behind the injury alleged." *Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. 397, 404 (1997). Specifically, "a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Id.*

As such, to establish whether a municipality's alleged failure to train amounted to a deliberate or conscious choice, a plaintiff must demonstrate that: "(1) municipal policymakers know that employees will confront a particular situation; (2) the situation involves a difficult choice or a history of employees mishandling; and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights." *Doe v. Luzerne Cty.*, 660 F.3d 169, 180 (3d Cir. 2011) (quoting *Carter v. City of Phila.*, 181 F.3d 339, 357 (3d Cir. 1999)). "A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." *Connick v. Thompson*, 563 U.S. 51, 62 (2011) (citation omitted).

Rodriguez fails to plead the existence of any policy, custom, or practice, that could form the basis of liability. The Second Amended Complaint is devoid of any facts demonstrating a policy or facts supporting that excessive force was so pervasive and well settled as to constitute a custom under *Monell* in the Trenton Police Department. Rodriguez fails to allege any facts to support a finding that the Trenton Police Department failed to train, supervise, penalize, or correct any officer's behavior. There are no facts supporting the failure to provide any specific training or a deliberate indifference to the rights of Rodriguez or anyone.

Moreover, the Court cannot conclude that the Trenton Police Department supervised an employee when it does not know which officers committed the misconduct alleged by Rodriguez. Accordingly, all § 1983 claims against them are **DISMISSED** for this reason as well.

## IV. CONCLUSION

For the reasons set forth above, Defendants' Motion to Dismiss is **GRANTED**[2] **WITH PREJUDICE**.[3]

Date: September 12, 2019

*/s/ Brian R. Martinotti*
**HON. BRIAN R. MARTINOTTI**
**UNITED STATES DISTRICT JUDGE**

---

[2] Because Defendants' were unable to comprehend Rodriguez's Second Amended Complaint, they mounted several defenses the Court finds irrelevant. Specifically, they argue Rodriguez's Second Amended Complaint should be dismissed because she failed to file a tort claim notice and because her personal injury claim is barred by the statute of limitations. The Court does not construe the Complaint to plead causes of action under the Tort Claims Act or for personal injury. Nevertheless, to the extent she attempted to plead such the claims fail pursuant to Rule 8(a) and 12(b).

[3] This Court previously dismissed Rodriguez's Amended Complaint for lack of jurisdiction and gave her one last opportunity to file a second amended complaint curing the deficiencies addressed on the record. Although the Court did not reach the merits, it noted that the Second Amended Complaint failed to state a claim for relief under 12(b)(6). Rodriguez has failed to cure the deficiencies. Rodriguez has filed three complaints, therefore, granting her leave to amend at this rate would be futile. The Court dismisses with prejudice.